**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Eric Gerow, | Case No. CV-23-01059-PHX-DGC |
| Plaintiff, | **ORDER** |
| vs. | |
| U.S. Department of Justice, et al., | |
| Defendants. | |

City and State Defendants have filed motions to dismiss Plaintiff's first amended complaint, a motion for summary disposition, a motion to strike the second amended complaint, and a motion to strike Plaintiff's sur-reply. Docs. 76, 78, 80, 81, 87.[1] Plaintiff Eric Gerow has filed a motion for sanctions. Doc. 59. The motions are briefed and oral argument will not aid the Court's decision. *See* LRCiv 7.2(f). For reasons stated below, the Court will grant in part Defendants' motions to dismiss, deny Defendants' motions to strike and for summary disposition, and deny Plaintiff's motion for sanctions.

**I.     Background.**

Plaintiff's first amended complaint ("FAC") contains the following allegations. In February 2018 Plaintiff contracted with Tom Blackwell of Blackwell Automotive to have

---

[1] For purpose of this order, "City Defendants" are the City of Phoenix and Phoenix Police Department. "State Defendants" are the Arizona Department of Public Safety, Arizona Attorney General's Office, Arizona Department of Transportation, Arizona Auto-Theft Authority, Arizona Department of Insurance and Financial Institutions, Mark Brnovich, Heston Silbert, Andres Vasque, Matthew Murray, Shawn Steinberg, Tammy Miller, Nicole Shaker, John Halikowski, Tim Lane, Brian Eckenboy, Keith Richerson, Kris Mayes, Dan Barr, Lawrence Robertson Jr., and Anthony Falcone.

work done on his vehicle.  Blackwell failed to perform maintenance on the vehicle for the next two years and did not update Plaintiff on the status of his car.  In June 2020, Plaintiff contacted Blackwell about the car and asked for the work to be completed.  Blackwell reportedly apologized for his failure to work on the vehicle and promised to have it completed by July 31, 2020.  After Blackwell again failed to finish the work, Plaintiff asked for the return of his car.  Blackwell responded that he would keep the money paid for the service as well as the vehicle unless Plaintiff paid approximately $30,000 in vehicle storage charges.  Doc. 49 ¶¶ 55-56, 58, 61-62.

When Plaintiff failed to pay the storage charges, Blackwell purportedly moved the car to a different location without telling Plaintiff.  When Plaintiff learned the car had been moved, he contacted the Phoenix Police Department ("PPD") and the Arizona Department of Public Safety ("DPS") to report the car had been stolen.  PPD dispatched Officer Julian Rosario to investigate, but Officer Rosario refused to inform Plaintiff where the car was located and instead suggested Plaintiff pay Blackwell the storage charges.  The case was ultimately assigned to Detective Dan Schneider, who declined to answer Plaintiff's phone calls and closed the case without talking to Plaintiff.  After Plaintiff complained about PPD's inaction, Officer Gary Gombar visited Blackwell to investigate the complaint, but took no further action.  *Id.* ¶¶ 68-69, 71, 88-90.

Plaintiff reported the incident to the Arizona Attorney General's Office ("AGO") Consumer Protection Unit.  The AGO, represented by Assistant Attorney General Nicole Shaker, informed Plaintiff that his claim was civil and outside the scope of their purview.  DPS, including Officer Anthony Falcone, also declined to investigate.  When Plaintiff contacted DPS for assistance, Officer Falcone aggressively questioned him about his claims and, after confusing Plaintiff, threatened to charge him with making a false statement.  *Id.* ¶¶ 95, 117.

Plaintiff then contacted the office of Mayor Kate Gallego to report the inaction of PPD.  Plaintiff spoke with Daniel Perez on Mayor Gallego's staff, who reportedly terminated the phone call.  Plaintiff also attempted to communicate with the Arizona

Department of Transportation (ADOT) to prevent a lien or transfer of title on the vehicle after Blackwell threatened to file a lien if Plaintiff did not pay the storage fees.  ADOT enforcement officer Keith Richerson was unable to assist Plaintiff.  Plaintiff contacted the Arizona Auto Theft Authority, a department of the Arizona Department of Insurance and Financial Institutions ("DIFI"), in an attempt to recover his car.  Plaintiff reported his experience to DIFI, as well as those he had learned of on Yelp.  DIFI reported that they could not help Plaintiff with his matter.  *Id.* ¶¶ 97, 99, 102, 105-09, 112-14.

In 2021, the U.S. Department of Justice ("DOJ") announced that it was launching an investigation into wrongdoing at PPD.  The DOJ issued a public notice requesting that anyone who was the victim of PPD misconduct contact them and report their experience. Plaintiff reported his experience to DOJ, but it took no action. *Id.* ¶¶ 110-11.

Proceeding *pro se*, Plaintiff filed his original complaint in December 2022 in the Middle District of Florida against more than twenty government agencies, officers, and employees in their personal and official capacities, alleging violations of both federal and state law.  Doc. 1.  Plaintiff seeks declaratory and injunctive relief and compensatory and punitive damages.  Plaintiff filed his FAC in May 2023 in response to motions to dismiss from the City and State Defendants.  Docs. 36, 37, 49.  Plaintiff also filed a motion for sanctions against counsel for the City of Phoenix.  Doc. 59.  The Middle District of Florida transferred Plaintiff's case to this court in June 2023.  Doc. 61.

**II.    Defendants' Motion to Strike the SAC.**

Following further motions to dismiss, and without leave of court or consent by Defendants, Plaintiff filed a second amended complaint ("SAC") in August 2023.  The 127-page filing includes six additional counts and Plaintiff's responses to Defendants' motions to dismiss.  Doc. 79.

The City and State Defendants filed a joint motion to strike the SAC on August 24, 2023, arguing that Plaintiff violated Federal Rule of Civil Procedure 15 by filing it without leave of court or their consent.  Doc. 81 at 4.  Rule 15 provides that a "party may amend its pleading once as a matter of course" – as Plaintiff did when he filed

the FAC (Doc. 49) – but in all other cases "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(1)-(2). Plaintiff did not obtain Defendants' or the Court's permission to file the SAC.[2]

Because Plaintiff failed to comply with Rule 15 and LRCiv 15.1(b), the SAC is not validly filed. *See Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002, 1007 (9th Cir. 2015) (holding that if Plaintiff has already filed one amendment as a matter of course he must seek consent to file another). The FAC remains the operative complaint. Because portions of the SAC serve as a response to Defendants' motions to dismiss, the SAC will be left on file, the Court will consider it in ruling on Defendants' motions to dismiss, and the Court will deny as moot Defendants' motion to strike.

## III.   Defendants' Motion for Summary Disposition.

On August 23, 2023, the City and State Defendants filed a joint motion for summary disposition requesting that the Court dismiss the FAC because Plaintiff had failed to respond to their motions to dismiss. Doc. 80. The Court may dispose of a motion summarily "if the unrepresented party . . . does not serve and file the required answering memoranda." LRCiv 7.2(i).

Public policy favors disposition of cases on their merits. Because Plaintiff is proceeding *pro se* and filed his SAC, which includes his responses to the motions to dismiss, only five days after the response deadline, the Court will address the motions to dismiss on their merits and deny Defendants' motion for summary disposition.

## IV.   Motions to Dismiss.

### A.   Legal Standards.

A complaint that sets forth a cognizable legal theory will survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) if it contains

---

[2]   Plaintiff argues that he was not required to comply with Rule 15 because his SAC is a "de novo document" (Doc. 82 at 4), but there is no such exception to the rule. Plaintiff also asserts that he has the right to file an amended complaint anytime a Defendant files a motion to dismiss (*id.* at 7), but this too is an incorrect reading of Rule 15. If the Plaintiff wishes to file a further amended complaint, he must comply with Rule 15 and LRCiv 15.1.

"sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The complaint's factual allegations are taken as true and construed in the light most favorable to the plaintiff.  *See Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  A complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 559.  A complaint may be dismissed "based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

Generally, when deciding a Rule 12(b)(6) motion, the court looks only to the face of the complaint and attached documents. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).  The court may consider evidence outside the complaint if "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

**B.    State Law Claims.**

**1.    DPS, ADOT, ATA, DIFI, and PPD are non-jural entities.**

Defendants move to dismiss all state law claims against DPS, ADOT, ATA, DIFI, and PPD because they are non-jural entities that may not be sued under Arizona law. Docs. 76 at 4-5, 78 at 4.  "Governmental entities have no inherent power and possess only those powers and duties delegated to them by their enabling statutes.  Thus, a governmental entity may be sued only if the legislature has so provided." *Braillard v. Maricopa Cnty.*, 232 P.3d 1263, 1269 (Ariz. Ct. App. 2010) (cleaned up).  There must be specific statutory authority for such a suit.  *Id.*  Courts in this district have held that DPS, ADOT, and PPD are non-jural entities. *See Platt v. Moore*, No. CV-16-08262-PCT-BSB, 2019 WL 10248681 n. 7 (D. Ariz. Feb. 26, 2019) (DPS); *Elliott v. Arizona Dep't of Motor Vehicles*, No. CV-12-08153-PCT-JAT, 2013 WL 1145833 (D. Ariz. Mar. 18,

2013) (ADOT); *Stewart v. Arizona*, No. CV-22-00712-PHX-JAT (DMF), 2023 WL 399800 (D. Ariz. Jan. 25, 2023) (PPD).

Nothing in the enabling statutes for ATA or DIFI suggests that the state legislature has granted them the power to be sued.  *See* A.R.S. § 28-311 (enabling statute for ATA); A.R.S. §§ 20-466(E), (G) (enabling statutes for DIFI); *compare* A.R.S. § 38-714(A)) ("Arizona State Retirement System . . . may sue and be sued); A.R.S. § 15-1625(3) (The [Arizona Board of Regents] may . . . sue and be sued.").  Plaintiff correctly notes that this does not provide them immunity under federal law, but it does bar state law claims against them.  Doc. 79 at 52.  The Court accordingly will dismiss all state law claims against Defendants DPS, ADOT, ATA, DIFI, and PPD.

### 2.    Arizona's Notice of Claims Statute.

Defendants move to dismiss all state law claims on the basis that Plaintiff did not comply with Arizona's notice of claims statute, A.R.S. § 12-821.01.  Docs. 76 at 6-9, 78 at 5-6.  Section 12-821.01 establishes the procedure a plaintiff must follow before bringing a claim against a public entity or employee of the State:

> Persons who have claims against a public entity or a public employee shall file claims with the person or persons authorized to accept service for the public entity or public employee as set forth in the Arizona rules of civil procedure within one hundred eighty days after the cause of action accrues. . . .   Any claim which is not filed within one hundred eighty days after the cause of action accrues is barred and no action may be maintained thereon.

A.R.S. § 12-821.01(A).  Plaintiffs who do not comply with this statutory requirement are barred from asserting the claim in court.  *See Salerno v. Espinoza*, 115 P.3d 626, 628 (Ariz. Ct. App. 2005).  Under Arizona Rule of Civil Procedure 4.1, proper service on a state entity may be made by service on the AGO, while service on an individual may be made by serving the individual personally, leaving a copy at their home, or delivering a copy to an agent authorized to receive process for that individual.  Ariz. Civ. P. Rule 4.1(d)(1)-(3), (h)(1).

Plaintiff did not attempt to serve a notice of claim on any of the individual defendants, DIFI, or ATA. His state law claims against these Defendants are therefore barred. *Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 152 P.3d 490, 496 (2007) ("Because McDonald did not file a valid notice of claim within the statutory time limit, her claim is barred by statute.").

Plaintiff sent email claims to DPS, AGO, and DOT (Docs 76-1), but he emailed these claims to the Arizona Department of Administration ("ADOA"), which is not an entity authorized by law to receive service of process for these agencies. Ariz. Civ. P. Rule 4.1(h)(1). ADOA forwarded these emails to the correct entities, but ADOA cannot legally cure defective attempts at service. The notice-of-claim statute "demands strict compliance . . . substantial compliance is insufficient." *Grubbs v. Arizona*, No. CV-20-02369-PHX-DJH, 2021 WL 4552419 at *7 (D. Ariz. Oct. 5, 2021).[3]

The City Defendants contend that Plaintiff's notices of claim against them were untimely because they were not served within 180 days of when the claims accrued on November 2, 2020. Doc. 78 at 3. A cause of action accrues for the purposes of the statute "when the damaged party realized he or she has been damaged and knows or reasonably should know the cause, source, act, eve, instrumentality, or condition that caused or contributed to the damage." A.R.S. § 12-821.01(B); *see Stulce v. Salt River Project Agr. Imp. & Powder Dist.*, 3 P.3d 1007, 1010 (Ariz. Ct. App. 1999) (explaining that the discovery rule is used to determine the time of accrual). The City Defendants point to the PPD Incident Report for this matter, which describes PPD's investigation into Plaintiff's claims and their report to Plaintiff that the matter was civil, not criminal in

---

[3] Defendants attached copies of Plaintiff's notices of claim against AGO, DOT, DPS, City of Phoenix, and PPD to their motions to dismiss. *See* Docs. 76-1, 78-1. The notices of claim are integral to Plaintiff's state law claims, and there is no dispute as to the authenticity of the attachments. Therefore, the Court will address the issue without converting the motions to dismiss into motions for summary judgment. *See Fidler v. Arizona*, No. CV-22-00300-PHX-DWL, 2022 WL 16649520 n. 10 (D. Ariz. Nov. 3, 2022) (resolving notice of claim issue at the motion to dismiss stage rather than the motion for summary judgment stage because the parties did not dispute how service was attempted, a copy of the notice of claim was filed with the motions to dismiss, and the issue was a "pure question of law.").

nature.  The report indicates that the investigation took place between September and November 2020.  Plaintiff contends that his causes of action accrued in May 2021, but he provides no factual support for that assertion and his notice to the City Defendants does not describe any conduct after November 2020.  Doc. 78-1.  The Court concludes that Plaintiff's claim accrued in November 2020.  His notice of claim on June 2, 2021 was beyond the 180-day statutory deadline and did not satisfy § 12-821.01.  His state law claims against the City Defendants are barred.  *Deer Valley Unified Sch. Dist. No. 97*, 152 P.3d at 496.[4]

### 3.      Negligence (Counts 26, 27, 37).

City Defendants, AGO, DPS, ADOT and the individual State Defendant employees move to dismiss the "simple negligence" claims asserted in Counts 26 and 37 (Doc. 49 ¶¶ 184-85, 201-02) on the ground that these Defendants are immune under Arizona law from such claims.  Docs. 76 at 14-15, 78 at 6-7.

Under Arizona law, government entities are entitled to qualified immunity from claims of simple negligence for the discretionary actions of their investigating officers made in the course of their official duties.  *See Landeros v. City of Tucson*, 831 P.2d 850 (Ariz. Ct. App. 1992) (City of Tucson not liable for simple negligence of police officer who purportedly failed to properly investigate a witness statement); *Hulstedt v. City of Scottsdale*, 884 F. Supp. 2d 972, 1017 (D. Ariz. 2012) (police officers making discretionary decisions while acting in their official capacity in Arizona are liable only if

---

[4] Plaintiff challenges § 12-821.01 on constitutional grounds.  Doc. 79 at 57-64.  He argues that the 180-day period is arbitrary and denies plaintiffs due process under the Fifth, Seventh, and Fourteenth Amendments to the U.S. Constitution, but he cites no authority for these arguments and courts have held that such notice statutes do not deny due process.  *Dennison v. Ryan*, 522 F. App'x 414, 417-18 (9th Cir. 2013); *see also Cook v. State*, 521 P.2d 599, 602 (denying Constitutional due process challenges to Washington's notice of claims statute).   He further argues that the statue is an unconstitutional "special law," denies equal rights under law, and is vague, but Arizona courts have rejected these arguments.  *See Stulce*, 3 P.3d at 1007 (rejecting challenges that the statute was vague, created a "special law," and violated equal protection).  Plaintiff argues that the statute violates the equitable tolling doctrine and various federal statutes, but he cites no case law suggesting that the doctrine or these statutes have a preemptive or invalidating effect on state notice laws.  His invalidity arguments are not persuasive.

plaintiffs establish gross negligence); A.R.S. § 12-820.02(A)(2), (6) (conferring qualified immunity on public employees acting within the scope of their employment who fail to make an arrest or fail to discover violations of law when inspecting property). Defendants likewise are immune from Plaintiff's claims of simple negligence based their purported failure to initiate criminal proceedings against Tom Blackwell or Blackwell Automotive.

Plaintiff asserts a claim for gross negligence in Count 27.  Doc. 49, ¶¶ 186-87.  To state such a claim, a plaintiff must allege facts showing the defendant failed to act when he or she had "reason to know facts which would lead a reasonable person to realize that his or her conduct not only creates an unreasonable risk of bodily harm to others but also involves a high probability that substantial harm will result." *Walls v. Ariz. Dep't of Pub. Safety*, 826 P.2d 1217, 1221 (Ariz. Ct. App. 1991).  Plaintiff does not identify what actions of Defendants were grossly negligent, nor does he allege facts suggesting that a reasonable person would have known Defendants' actions created a high probability of substantial harm.  Doc. 49, ¶¶ 186-87.  Count 27 therefore fails to state a claim for gross negligence and will be dismissed.

### 4.    Arizona Criminal Statute Claims (Counts 23, 24, 25).

Among his many claims, Plaintiff contends that Defendants violated various criminal statutes, including A.R.S. § 13-2310 (fraudulent schemes and artifices – count 23), A.R.S. § 13-1814 (theft of means of transportation – count 24), and A.R.S. § 13-1802 (theft – count 25).  Doc. 49 at ¶¶ 178-83.  Courts in this district have held that A.R.S. §§ 13-1802 and 12-2310 provide no private right of action to civil litigants. *See Chabrowski on behalf of ARTBE Enters., LLC v. Litwin*, No. CV-16-03766-PHX-DLR, 2017 WL 2841212, at *2 (D. Ariz. Jan. 19, 2017); *Finch v. Transworld Sys. Inc.*, No. CV-21-01236-PHX-SMB, 2023 WL 3008070 at *2 (D. Ariz. Apr. 19, 2023) (dismissing claims under A.R.S. §§ 13-1802 and 12-2310 because plaintiffs could not maintain civil actions under these criminal statutes).  And in Arizona, courts may not infer a private right of action "based on a criminal statute where there is no indication whatsoever that

the legislature intended to protect any special group by creating a private cause of action by a member of that group." *Phx. Baptist Hosp. & Med. Ctr., Inc., v. Aiken*, 877 P.2d 1345, 1350 (Ariz. Ct. App. 1994).  Plaintiff has made no such showing with respect to A.R.S. § 13-1814.

The Court is not persuaded by Plaintiff's argument that an implied private right of action exists when suing a government entity rather than a private party.  Doc. 79 at 66.  Nor, as Plaintiff requests, will the Court reframe his allegations under another statute.  *Id.*  Counts 23-25 will be dismissed.

### 5. Infliction of Emotional Distress (Counts 22, 35, 36).

Plaintiff asserts in Counts 22 and 36 that Defendants are liable for intentional infliction of emotional distress ("IIED").  Doc. 49 ¶¶ 176-77, 199-200.  Defendants move to dismiss these claims on the basis that Plaintiff has failed to allege facts sufficient to state a claim for IIED.

To state a claim for IIED under Arizona law, a plaintiff must allege facts showing (1) the defendant's conduct is capable of being characterized as extreme and outrageous, (2) the defendant either intended to cause emotional distress or recklessly disregarded the near certainty that such distress would result, and (3) severe emotional distress occurred as a result of the defendant's conduct.  *Watts v. Golden Age Nursing Home*, 619 P.2d 1032, 1035 (Ariz. 1980) (citing Restatement 2nd of Torts § 46).  "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery[.]".  *Id.*  The conduct necessary to support a claim "falls at the very extreme edge of the spectrum of possible conduct."  *Id.* at 1025.  The acts alleged by Plaintiff in this case, even if true, are not sufficiently extreme and outrageous to support a claim for relief.  *See Helfond v. Stamper*, 716 P.2d 70 (Ariz. Ct. App. 1986) (compiling cases).

Plaintiff asserts in Count 35 that Defendants are liable for negligent infliction of emotional distress ("NIED").  Doc. 49 ¶¶ 197-98.  This tort requires that emotional distress result in illness or bodily harm.  *Keck v. Jackson*, 593 P.2d 668, 669 (1979).

1  Bodily harm can include "substantial, long-term emotional disturbances unaccompanied
2  by any physical injury." *Harris v. Maricopa Cnty Super. Ct.*, 631 F.3d 963, 978 (9th Cir.
3  2011).  Plaintiff does not allege illness, bodily harm, or substantial long-term emotional
4  disturbance as a result of Defendants' conduct.  He asserts that the actions of Defendants
5  have caused him stress and monetary damages, but neither are sufficient to meet the high
6  bar of asserting a NIED claim.  He has failed to state a claim.

7          The Court will dismiss Counts 22, 35, and 36.

8               **6.      Conversion, Malpractice, and Libel (Counts 28, 38, 39).**

9          Plaintiff asserts a conversion claim in Count 28.  Doc. 49 ¶¶ 188-89.  Defendants
10  contend that they cannot be liable for conversion because they did not have control over
11  Plaintiff's car or do anything to effect its disposition for their own use.  Doc. 78 at 24-25.
12  "Conversion is an intentional exercise of dominion or control over a chattel which so
13  seriously interferes with the right of another to control it that the actor may justly be
14  required to pay the other the full value of the chattel." *Miller v. Hehlen*, 104 P.3d 193,
15  203 (Ariz. Ct. App. 2005) (citing Restatement 2d of Torts § 22A(1) (1965)).  Plaintiff has
16  not alleged facts suggesting Defendants intended to exercise dominion or control over the
17  car in a manner inconsistent with his rights, nor that they exercised control over the car at
18  any time.  The Court will dismiss Count 28.

19          Plaintiff asserts a malpractice claim in Count 38.  Doc. 49 ¶¶ 203-04.  But there is
20  no claim for police malpractice – "[t]he police have no affirmative obligation to
21  investigate a crime in a particular way or to protect one citizen from another even when
22  one citizen deprives the other of liberty of property." *Gini v. Las Vegas Metro. Police*
23  *Dep't*, 40 F.3d 1041, 1045 (9th Cir. 1994).  And to bring a claim for legal malpractice, a
24  plaintiff must allege the existence of an attorney-client relationship. *Phillips v. Clancy*,
25  733 P.2d 300, 303 (Ariz. Ct. App. 1986).  Plaintiff's bare assertion that Defendants
26  violated the "reasonably expected professional responsibilities of their licensed
27  professions" is insufficient to maintain an action for malpractice against Defendants.  The
28  Court will dismiss Count 38.

Plaintiff asserts in Count 39 that the State Defendants and Defendants Robertson, Mayes, and Barr committed libel when they described Plaintiff as "angry" in a previous court filing.  Doc. 49 ¶¶ 205-06; *see* Doc. 43 at 1 n.1 ("It is quite apparent from the content and tone of his pleadings and emails that Plaintiff is angry.").  Generally, only assertions of fact, not opinion, may be defamatory.  *Grand Canyon Skywalk Dev., LLC v. Cieslak*, No. 2:13-CV-596-JAD-GWF, 2014 WL 2123255 (D. Nev. May 21, 2014).  "[A] statement is not actionable if it does not present the kind of empirical question a fact-finder can resolve."  *Takieh v. O'Meara*, 497 P.3d 1000, 1006 (Ariz. Ct. App. 2021) (cleaned up).  Defendants' assertion that Plaintiff was angry was a statement of opinion, and does not present the kind of factual question a jury can resolve.  *See id.* at 1007 (determining that whether someone is an "idiot" is inherently a statement of opinion); *Hawks v. Seery*, No. CV-21-00092-PHX-DGC, 2023 WL 5206135, at *9, n.8 (D. Ariz. Aug. 14, 2023) (statement that someone "has no ethical or moral values" was a subjective opinion).  The Court will dismiss Count 39.

## C.  Federal Claims.

### 1.  Sovereign Immunity.

"The Eleventh Amendment erects a general bar against federal lawsuits brought against a state."  *Porter v. Jones*, F.3d 483, 491 (9th Cir. 2003).  "A suit in which the state or one of its agencies is named as the defendant is proscribed by the Eleventh Amendment" unless the state consents or Congress abrogates the State's sovereign immunity through appropriate legislation.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253-54 (2011).  Absent a waiver of sovereign immunity, the state and agencies considered an equivalent of the state may not be sued for damages.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989).

In addition, state officials sued in their official capacity are not subject to suit for money damages as they are not considered "persons" within the meaning of 42 U.S.C. § 1983 and may not be held personally liable.  *Id.*; *see also Pena v. Gardner*, 976 F.2d

12

469 (9th Cir. 1992), *as amended* (Oct. 9, 1992); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974) (Any "suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment.").

Because DPS, AGO, ADOT, ATA, and DIFI are agencies of the State of Arizona, Plaintiff's claims for monetary relief against them are barred by sovereign immunity. Plaintiff's claims for monetary damages against the individual state defendants in their official capacities are also barred. *See Shreeve v. Ducey*, No. CV-20-01116-PHX-DWL, 2020 WL 4016170 (D. Ariz. July 16, 2020) (dismissing claims for monetary damages against three state officials sued in their official capacity because such defendants are not "persons" under § 1983).

### 2. Constitutional Claims.

Defendants move to dismiss Plaintiff's claims alleging violations of the U. S. Constitution. Docs. 76 at 17-18, 78 at 8.

### a. First Amendment Claims (Counts 1 through 6).

Plaintiff alleges violations of the First Amendment rights to free speech and petition based on the actions of Officer Anthony Falcone and City Employee Daniel Perez. *See* Doc. 49 ¶ 136. Specifically, Plaintiff alleges that these defendants refused to listen to his complaints about Blackwell and the City's failure to investigate, and conspired to ensure that his complaints would not be responded to by an agency. *Id.*

To allege a violation of First Amendment retaliation, a Plaintiff must allege that "(1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity, and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019). Whether a defendant's actions would "chill a person of ordinary firmness" from engaging in a protected activity is generic and objective – whether a plaintiff was, or would have been, chilled is not the test. *O'Brien v. Welty*, 818 F.3d 920, 922 (9th Cir. 2016).

Plaintiff provides no factual assertions to suggest any Defendants other than Mr. Perez or Officer Anthony Falcone violated his First Amendment rights.[5]  With respect to Officer Falcone, Plaintiff has sufficiently alleged that he engaged in protected speech, that his protected activity was a motivating factor in the Defendant's conduct, and that Officer Falcone chilled his speech and prevented him from seeking DPS's help.  *See Doe v. Cnty. of San Mateo*, No. CV 07-05596 SI, 2009 WL 735149, at *5 (N.D. Cal. Mar. 19, 2009) (noting that filing a grievance with a municipal police department falls within activity protected from retaliation under the First Amendment).  Specifically, Plaintiff alleges that Officer Falcone aggressively questioned him about his complaint and threatened him with prosecution for making a false statement.  Doc. 49 ¶ 95 ("When this DPS officer believed he had tripped up Plaintiff with his rapid fire and aggressive questioning, this DPS officer immediately threatened to charge Plaintiff with 'making a false statement,' despite Plaintiff not having done so.").  Taken as true, these allegations are sufficient for Plaintiff's retaliation claim to survive a motion to dismiss.  *See White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2008) ("Informal measures, such as the threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation can violate the First Amendment[.]"); *Tabi v. Baker*, No. 8:20-CV-00323-VBF-JC, 2022 WL 3162203 at *5 (C.D. Cal. Feb. 2, 2022) (threatening to arrest plaintiff who attempted to file a complaint with the College president was chilling);  *Doe v. City of San Diego*, 198 F. Supp. 3d 1153, 1162 (S.D. Cal. 2016) ("Show of government force, including, as here, threat of arrest, chills the First Amendment rights.").

Plaintiff also asserts three claims for violation of his freedom to petition, premised on the same interactions with Officer Falcone and Mr. Perez.  The Ninth Circuit has said that retaliation and freedom of petition claims are subject to the same test.  *See CarePartners, LLC v. Lashway*, 545 F.3d 867, 877 (9th Cir. 2008).  Plaintiff had the right

---

[5] Defendant Perez has not yet been served and has not moved to dismiss the claims against him.  The Court will not address whether Plaintiff has sufficiently alleged a First Amendment claim against him.

to petition government for redress of grievances.   The First Amendment does not, however, guarantee that there will be any government response to a petition or that the government will take any action regarding the relief demanded by the petitioner[.]" *Catchings v. City of Santa Monica*, No. CV 21-9072 MEMF (PVC), 2022 WL 18456826 (C.D. Cal. Mar. 15, 2022).  Plaintiff has not sufficiently alleged facts to suggest that any Defendants other than Officer Falcone are liable for violating his First Amendment right to petition.  Plaintiff has not alleged facts to support his third retaliation and right to petition claims, namely that Defendants collectively conspired to ensure his complaints would not be heard by any agency within the State.  Doc. 49 ¶¶ 140, 146.  Accordingly, Counts 2, 3, 5, and 6 will be dismissed as to all Defendants.  Counts 1 and 4 will be dismissed for all Defendants except Officer Anthony Falcone.[6]

### b.   Fourteenth Amendment Claims (Counts 7 and 8).

Plaintiff asserts in Counts 7 and 8 that Defendants have violated his Fourteenth Amendment rights to equal treatment and equal protection under the law because he was "not provided assistance routinely afforded to similarly situated parties."  Doc. 49 at 43. Defendants argue that Plaintiff has not sufficiently pled the existence of "similarly situated parties" who were "routinely afforded" the assistance he sought and alleges he was unlawfully denied.  Doc. 76 at 19.  The Court will dismiss the claims.

"The central inquiry in any disparate treatment claim under the Equal Protection Clause is whether 'an invidious discriminatory purpose was a motivating factor' in some government action."  *Ballou v. McElvain*, 29 F.4th 413, 424 (9th Cir. 2022) (cleaned up). The Ninth Circuit has said that while a comparative class is *one* way to allege a disparate treatment claim, other circumstantial or direct evidence may suffice.  *Id.* at 425.  But

---

[6] City Defendants also move to dismiss Plaintiff's First Amendment claims on the ground that Plaintiff has failed to allege that a policy, practice, or custom caused the alleged injury as required by *Monell v. Dep't of Soc. Servs of N.Y.*, 436 U.S. 658, 694-95 (1978).  Because Defendant has not stated a claim for relief against the City Defendants on this issue, the Court will not address this contention.  Plaintiff's failure to establish *Monell* liability for his Fourth and Fourteenth Amendment claims is discussed below.

1    Plaintiff provides no comparative class or other evidence to suggest a discriminatory
2    purpose behind the actions of Defendants, and Count 7 will be dismissed.

3         Further, Plaintiff has not sufficiently pled the basis for his equal protection claim –
4    Count 8 is limited to a bare allegation that Plaintiff's right to equal protection has been
5    violated.  Count 8 will also be dismissed.

6                      **c.     Fourth Amendment Claim (Count 9).**

7         Plaintiff asserts in Count 9 that Defendants violated his Fourth Amendment right
8    to be free from unreasonable searches and seizures because they acted to fraudulently
9    transfer title of Plaintiff's vehicle to Tom Blackwell.  Doc. 49 at 43-44.  Defendants
10   contend that Plaintiff has failed to establish the presence of any "government action"
11   which caused his property to be seized.  Doc. 76 at 20.

12        To allege a Fourth Amendment violation, plaintiffs must identify some
13   government action that led to a violation of their rights.  *U.S. v. Jacobsen*, 466 U.S. 109,
14   113 (1984) ("This Court has also consistently construed [Fourth Amendment] protection
15   as proscribing only governmental action; it is wholly inapplicable to a search or seizure,
16   even an unreasonable one, effected by a private individual not acting as an agent of the
17   Government or with the participation or knowledge of any government official.").
18   Because Plaintiff has not alleged any action by state or city officials which effected a
19   seizure of his vehicle, the Court will dismiss Count 9.

20              **d.     Fifth and Sixth Amendment Claims (Counts 10 and 11).**

21        In Counts 10 and 11, Plaintiff asserts violations of his due process protections as
22   guaranteed by the Fifth and Sixth Amendments.  Doc. 49 ¶¶ 152-55.  Plaintiff has not
23   alleged facts to suggest that Defendants violated his Fifth Amendment due process rights.
24   The bare assertion that his rights have been violated is insufficient to support this claim.
25   Further, "[t]he protections provided by the Sixth Amendment are explicitly confined to
26   'criminal prosecutions.'"  *United States v. $292,888.04 in U.S. Currency*, 54 F.3d 564,
27   569 (9th Cir. 1995) (quoting *Austin v. United States*, 509 U.S. 602, 608 (1993)).  Counts
28   10 and 11 will be dismissed.

1       **e.    Commerce Clause Claim (Count 12).**

2     Plaintiff asserts in Count 12 that Defendants restrained his right to freely conduct

3 interstate commerce in violation of Article 1, Section 8, Clause 3 of the U.S. Constitution

4 (the "Commerce Clause").  Defendants argue that the Clause creates no private right of

5 action.  Doc. 78 at 11.  "The purpose of the Commerce Clause is allocation of power

6 between state and national governments, not protection of individuals from abuse of

7 government authority.  The Commerce Clause creates no individual rights." *Int'l Org. of*

8 *Masters, Mates, & Pilots*, 831 F.2d 843, 847 (9th Cir. 1987); *see also Soboba Band of*

9 *Luiseno Indians v. Cnty. of Riverside*, No. EDCV 17-01141 JGB (SP), 2018 WL 6010322

10 at *3 (C.D. Cal. Mar. 22, 2018).  The Court will dismiss Count 12.

11      **3.    Federal Criminal Statute Claims (Counts 13-16, 18, 20, 21).**

12     Defendants move to dismiss Plaintiff's claims under federal criminal statutes 18

13 U.S.C. § 371 (conspiracy to commit mail and wire fraud – counts 13 and 15), 18 U.S.C. §

14 1343 (wire fraud – count 14), 18 U.S.C. § 1341 (mail fraud – count 18), and 17 U.S.C. §

15 1951 (the Hobbs Act – count 16) on the ground that these statutes do not grant Plaintiff a

16 private right of action.  The Court agrees.  *See Henry v. Universal Tech. Inst.*, 559 F.

17 App'x 648, 650 (9th Cir. 2014) ("The district court properly dismissed Henry's claims

18 under . . . 18 U.S.C. § 371 because th[is] statute[] do[es] not provide for a private right of

19 action."); *Ateser v. Bopp*, 29 F.3d 630, *2 (9th Cir. 1994) ("Courts have consistently

20 found that the mail and wire fraud statutes do not confer private rights of action.");

21 *Abcarian v. Levine*, 972 F.3d 1019, 1027 (9th Cir. 2020) (the Hobbs Act "contains no

22 rights-creating language manifesting an accompanying civil private right of action").  The

23 Court is not persuaded by Plaintiff's argument that because these claims may be

24 "predicate acts" under the Racketeer Influenced and Corrupt Organizations Act ("RICO")

25 Act, he is afforded a private right of action.  Doc. 79 at 65.  Counts 13, 14, 15, 16, and 18

26 will be dismissed.

27     Defendants also move to dismiss Plaintiff's claims under 18 U.S.C. § 241

28 (conspiracy against rights – count 20) and 18 U.S.C. § 242 (deprivation of rights under

color of law – count 21) on the ground that these statutes do not authorize a civil suit for damages.  Docs. 78 at 13-14, 76 at 22.  The Ninth Circuit has held that neither statute creates a private right of action.  *Fechter v. Shiroky*, 59 F.3d 175 at *4 (9th Cir. 1995) ("The Fechters also brought causes of action under 18 U.S.C. §§ 242, 242, and 245.  These claims were properly dismissed because, as criminal statutes, no private right of action exists for these claims.").  Counts 21 and 22 will be dismissed.

### 4.  RICO Claim (Count 17).

Defendants move to dismiss Plaintiff's RICO claim, arguing that he has not alleged facts to show a pattern of racketeering activity or an injury from such a pattern.  Doc. 78 at 12-13.  RICO provides a private right of action to recover for injuries caused by racketeering activities.  *See* 18 U.S.C. § 1964(c).  To state a viable RICO claim, a plaintiff must allege: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity (the "predicate acts"); (5) causing injury to the plaintiff's business or property.  *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996).

Plaintiff has not alleged facts to suggest a pattern of racketeering activity or injury as a result.  He also has not alleged that Defendants constitute an "enterprise."  "An enterprise 'is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'  It must have three structural features: 'a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.'" *Allen v. Cnty. of L.A.*, No. 2:20-cv-09421-DMG (SP), 2021 WL 6103536 at *9 (C.D. Cal. Sept. 16, 2021) (*citing Boyle v. U.S.*, 556 U.S. 938, 945-46 (2009)).  Plaintiff alleges no facts to suggest Defendants were acting in an organized manner or with a common purpose.  Plaintiff's conclusory allegations "lump defendants together, but do not plead the structural features of an enterprise." *Allen*, 2021 WL 6103536 at *9.  The Court will dismiss Count 17.

/ / /

/ / /

18

**5.      Section 1983, *Monell*, and *Canton* Claims (Counts 19, 30, 34).**

Plaintiff asserts three claims under 42 U.S.C. § 1983.  In Count 19, Plaintiff claims that Defendants "deprived him of his rights, privileges, and immunities secured by the Constitution and laws" – a bare assertion of the text of § 1983.  Doc. 49 ¶ 171.  As noted by Defendants, there is no cause of action under federal law for a violation of this statute.  Doc. 78 at 13.  Rather, it allows plaintiffs to assert violations of their constitutional and other federal rights against an entity or individual that is acting under color of state law.  Because he is proceeding *pro se*, the Court will infer that it is through § 1983 that Plaintiff has brought his claims alleging Constitutional violations (Counts 1-12).  The Court has dealt with those claims above, and will dismiss his stand-alone § 1983 claim in Count 19.

Plaintiff also asserts § 1983 claims against Defendants named in their official capacities under *Monell* and *Canton* theories of liability.  It appears from the FAC that Plaintiff asserts *Monell* liability for his claims alleging violations of the Fourth and Fourteenth Amendments.  *See* Doc. 49 ¶ 149.

Municipalities and local government units are considered persons under § 1983 and may be liable for causing a constitutional deprivation.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); *Long v. Cnty. of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006).  But a municipality "cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under [§ 1983] under a *respondeat superior* theory."  *Monell*, 436 U.S. at 691; *Ulrich v. City & Cnty. of S.F.*, 308 F.3d 968, 984 (9th Cir. 2002).  Liability attaches only where the municipality itself causes the constitutional violation through "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy."  *Monell*, 436 U.S. at 694; *Ulrich*, 308 F.3d at 984.

A municipality may be held liable under § 1983 when its employee's conduct was the result of (1) an expressly adopted official policy; (2) a longstanding practice or custom that constitutes the standard operating procedure of the municipality; (3) a

decision of an official (or a subordinate with delegated authority) who was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in his area of decision; or (4) a municipality's failure to train its employees when the failure to train amounts to deliberate indifference to the rights of others.  *See Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008); *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004); *see also City of Canton v. Harris*, 489 U.S. 378, 388 (1989) (outlining failure to train liability).

As discussed above, these claims against the State Defendants are barred on sovereign immunity grounds.  City Defendants argue that the claims against them should be dismissed because Plaintiff has not sufficiently alleged a custom, policy, or practice which violated his civil rights, nor has he alleged facts which suggest there was a failure to train.  Doc. 78 at 16-17.  The Court agrees.

Although Plaintiff outlines several instances in which he believes individual Defendants violated his rights, he does not allege facts showing that they had a custom or practice of doing so.  To establish custom, Plaintiff relies on (1) Yelp reviews which suggest other consumers have had trouble with Blackwell Automotive, and (2) the DOJ's current investigation into the City Defendants.  Neither is sufficient.  Doc. 79, ¶¶ 255-56.  The Yelp reviews suggest a pattern by Blackwell Automotive, but do not speak to a custom or policy by government officials.  Nor does Plaintiff's cursory mention of a DOJ civil rights investigation provide sufficient factual allegations to sustain a claim that Defendants had the standard operating procedure of ignoring citizen complaints.

Plaintiff's claim under § 1983 on a theory of *Canton* liability (failure to train) does not identify which federal right he is attempting to vindicate.  The theory also fails because Plaintiff does not make any factual allegations which suggest a pattern of constitutional violations by untrained employees or inadequacy in employee training.  The Court will dismiss Counts 30 and 34.

///

///

20

**D.      Relief Requested.**

Plaintiff seeks compensatory damages, punitive damages, a declaratory judgment, and injunctive relief.  Doc. 49 ¶¶ 207-13.

Defendants contend that punitive damages are unavailable to Plaintiff.  Docs. 76 at 15, 78 at 7.  Defendants note that under A.R.S. § 12-820.04, "[n]either a public entity nor a public employee acting within the scope of his employment is liable for punitive or exemplary damages."  "[P]unitive damages arising under state law claims are not recoverable against public employees acting within the scope of their public responsibilities."  *Sweet v. City of Mesa,* No. CV-17-00152-PHX-GMS, 2018 WL 2464111, at *2 (D. Ariz. June 1, 2018).  Accordingly, Plaintiff's request for punitive damages on his state law claims will be dismissed.

Defendants further contend that under 42 U.S.C. § 1983, punitive damages are not recoverable against municipalities or individual government officials in their official capacity.  But punitive damages may be allowed under § 1983 "when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights to others."  *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005).  Defendants do not address whether punitive damages are available against officers sued in their personal capacities, and the Court will not do so *sua sponte*.  *See Spears v. Ariz. Bd. of Regents*, 372 F. Supp. 3d 893, 925-26 (D. Ariz. 2019).

Plaintiff seeks injunctive and declaratory relief (1) ordering the State to recover and return his property, (2) recommending that PPD and DPS be placed under review by DOJ, (3) declaring Plaintiff injured by wrongful acts of a state employee acting in his official capacity for the sake of seeking recovery from their surety bonds under A.R.S. § 38-260, and (4) ordering Defendants to pay Plaintiff the surety bond amounts.

To state a claim for permanent injunctive relief, a plaintiff must allege facts demonstrating "(1) that [he] has suffered an irreparable injury; (2) that the remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a

remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).[7] Defendants seek dismissal of Plaintiff's request for injunctive relief on the ground that Plaintiff has failed to allege irreparable harm and that he is likely to be subject to constitutional violations or torts in the future. Doc. 78 at 18. Defendants also seek to dismiss Plaintiff's request for declaratory judgment under the Declaratory Judgement Act, 28 U.S.C. § 2201(a), on the ground that he has not alleged "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality." *Golden v. Zwicker*, 394 U.S. 103, 108 (1969).

The Court will not at this time address Defendant's arguments regarding dismissal of requested remedies. The viability of remedies will depend on the ultimate viability of claims. Defendants can address remedies on a more complete record at summary judgment or trial.

## V.   Plaintiff's Motion for Sanctions.

In June 2023, Plaintiff filed a motion for sanctions against counsel for the City, Jody Corbett, for allegedly violating the Middle District of Florida's Local Rule 3.01(g)(1), which requires a movant to confer with an opposing party in good faith before filing a motion. Doc. 59. Failure to comply with local rules, unless very serious, is not usually a basis for sanctions; the two instances in which Plaintiff contends Ms. Corbett did not confer dealt with now-moot motions; and the Court is not inclined to rule on motions based on local rules of another District. Plaintiff's motion will be denied.

## VI.   Defendants' Motion to Strike Plaintiff's Sur-Reply.

In October 2023 Defendants jointly filed a motion to strike a sur-reply from Plaintiff (Doc. 86) on the ground that sur-replies are not allowed under LRCiv 7.2(m). Doc. 87. As noted in the Court's order of December 5, 2023, motions to strike are

---

[7] The State Defendants assert that the test from *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008) applies. This test is for preliminary injunctive relief, which Plaintiff does not seek.

disfavored and are not frequently granted.  Doc. 91.  The Court will deny the motion to strike, but will disregard the improperly-filed sur-reply.  Plaintiff is reminded that absent the permission of the Court, a party opposing a motion is allowed only one responsive brief.  *See* LRCiv 7.2(m).

**IT IS ORDERED:**

1.    Defendants' motions to dismiss (Docs. 76 and 78) are **granted in part** and **denied in part**.  The motions are **granted** with respect to Counts 2, 3, 5-30, and 34-39 of the FAC.[8]  The motions are **denied** with respect to Counts 1 and 4 against Defendant Anthony Falcone.  The claims that remain in this case, therefore, are Counts 1 and 4 against Defendant Falcone (and Count 29, which is a remedy count to be addressed later in this litigation), and counts against Defendants who have not moved to dismiss.

2.    Defendants' motion to strike the SAC (Doc. 81) is **denied** as moot.

3.    Defendants' motion for summary disposition (Doc. 80) is **denied**.

4.    Plaintiff's motion for sanctions (Doc. 59) is **denied**.

5.    Defendants' motion to strike Plaintiff's sur-reply (Doc. 87) is **denied**.

Dated this 12th day of January, 2024.

David G. Campbell
Senior United States District Judge

---

[8] Plaintiff skipped three numbers in numbering the causes of action in his FAC (31, 32, and 33), so even though there appear to be 39 causes of action, there actually are only 36.